No. 23-20097

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

v.

SAMAN AHSANI, CYRUS ALLEN AHSANI

*Defendants – Appellees*,

v.

THE FINANCIAL TIMES LIMITED, GLOBAL INVESTIGATIONS REVIEW,
THE GUARDIAN,

*Intervenors – Appellants*.

On Appeal from the United States District Court for the Southern District of Texas
Case No. 4:19-CR-147 (Hon. Andrew S. Hanen)

**INTERVENORS-APPELLANTS' OPENING BRIEF**

Katie Townsend
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
ktownsend@rcfp.org

*Counsel for Intervenors-Appellants*

i

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that, in addition to the persons and entities listed in Plaintiff-Appellee's and Defendants-Appellees' Certificates of Interested Persons, the following listed persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification.

**The Financial Times Limited** is a private company, and is a wholly owned subsidiary of private company Financial Times Group Limited, which is wholly owned by private company Nikkei Inc. No publicly held corporation owns 10% or more of the stock of The Financial Times Limited.

**Global Investigations Review** is owned and operated by Law Business Research Limited, which is a private company and issues no stock.

**Guardian US**'s legal entity is Guardian News & Media LLC, a company incorporated in Delaware, whose registered office is at 315 West 36th St., New York, N.Y. 10018. Guardian News & Media LLC's parent corporation is Guardian News & Media Limited, a private company. No publicly held corporation owns 10% or more of Guardian US's stock.

The names of opposing law firms and counsel in the case are Jennifer Marie McCoy and Paul E. Coggins of Locke Lord LLP, counsel for defendants Saman

Ahsani and Cyrus Allen Ahsani, who also represented defendants at the district court.  In addition, Rachel Gagnebin Talay, of H Street Law PLLC, represented Saman Ahsani and Cyrus Allen Ahsani before the district court until January 11, 2023.  The United States is represented by Jeremy Raymond Sanders, Scott Meisler, and Suzanne Elmilady and was represented at the district court by Suzanne Elmilady, Dennis R. Kihm, Gerald Michael Moody, Jr., Gwendolyn Amelia Stamper, and Jonathan Robell.

Dated:  April 7, 2023

*/s/ Katie Townsend*
Katie Townsend
*Counsel for Intervenors-Appellants*

**STATEMENT REGARDING ORAL ARGUMENT**

Counsel for Intervenors-Appellants respectfully requests oral argument. This appeal raises important questions affecting the ability of members of the public, including members of the press, to exercise their First Amendment and common law rights of access to court records and proceedings, particularly in the context of criminal sentencing. Oral argument would assist the Court in determining these legal issues of great importance.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF AUTHORITIES.................................................................................. vii

STATEMENT OF JURISDICTION ........................................................................ 1

STATEMENT OF THE ISSUES .............................................................................. 2

STATEMENT OF THE CASE .................................................................................. 3

    I.    The Ahsani Prosecution and Saman Ahsani's Sentencing......................... 3

    II.    Intervenors-Appellants' first motion to unseal records and access proceedings in the Ahsani Prosecution. ...................................................... 5

    III.    Intervenors-Appellants' second motion to unseal records in the Ahsani Prosecution. ................................................................................... 7

    IV.    The district court's order. ........................................................................... 10

SUMMARY OF ARGUMENT............................................................................... 11

ARGUMENT ........................................................................................................ 15

    I.    The press and public have a constitutional and common law right of access to sentencing proceedings and related judicial records................. 15

        A.    The First Amendment guarantees the public a presumptive right to attend sentencing proceedings and inspect sentencing-related records. ............................................................. 16

        B.    The press and public have a qualified common law right to inspect sentencing-related judicial records. ................................... 21

    II.    The district court committed reversible error under both the First Amendment and common law when it closed part of Ahsani's sentencing without public notice and sealed the transcript of that closed proceeding....................................................................................... 24

III. The district court committed reversible error under both the First Amendment and common law when it denied Intervenors-Appellants' motion to unseal judicial records filed in connection with Ahsani's sentencing. ........................................................ 28

    A. The district court failed to apply the correct legal standard under the First Amendment. ........................................................ 28

    B. The district court failed to apply the correct legal standard under the common law................................................................. 39

IV. The district court's reliance on wholly sealed arguments denied Intervenors-Appellants a meaningful opportunity to be heard. ............... 44

CONCLUSION ................................................................... 49

CERTIFICATE OF SERVICE................................................. 50

CERTIFICATE OF COMPLIANCE .................................... 51

# TABLE OF AUTHORITIES

## Cases

*ABC, Inc. v. Stewart*,
  360 F.3d 90 (2d Cir. 2004) ................................................................. 27

*Abourezk v. Reagan*,
  785 F.2d 1043 (D.C. Cir. 1986) ......................................................... 14

*Belo Broad. Corp. v. Clark*,
  654 F.2d 423 (5th Cir. Unit A 1981) ................................................ 42

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021) ...................................................... *passim*

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*,
  920 F.3d 209 (5th Cir. 2019) ............................................................. 24

*Bradley ex rel. AJW v. Ackal*,
  954 F.3d 216 (5th Cir. 2020) ...................................................... *passim*

*CBS, Inc. v. U.S. District Court*,
  765 F.2d 823 (9th Cir. 1985) ............................................................. 35

*Davis v. E. Baton Rouge Par. Sch. Bd.*,
  78 F.3d 920 (5th Cir. 1996) ................................................................. 1

*Doe v. City of New York*,
  No. 22-CV-7910, 2022 WL 15153410 (S.D.N.Y. Oct. 26, 2022) ..................... 47

*Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) ...................................................... 14, 44

*Doe v. Shibinette*,
  16 F.4th 894 (1st Cir. 2021) ............................................................. 44

*F.T.C. v. AbbVie Prods. LLC*,
  713 F.3d 54 (11th Cir. 2013) ............................................................. 41

*Fed. Sav. & Loan Ins. Corp. v. Blain*,
  808 F.2d 395 (5th Cir. 1987) ............................................................. 24

*Ford v. City of Huntsville*,
242 F.3d 235 (5th Cir. 2001) .................................................... 25, 29, 40

*Gannett Co. v. DePasquale*,
443 U.S. 368 (1979) ....................................................................... 27

*In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*,
913 F.2d 89 (3d Cir. 1990) ....................................................... 44, 45, 46

*In re Cendant Corp.*,
260 F.3d 183 (3d Cir. 2001) ............................................................ 32

*In re Eisenberg*,
654 F.2d 1107 (5th Cir. Unit B 1981) ............................................. 45

*In re Hearst Newspapers, L.L.C.*,
641 F.3d 168 (5th Cir. 2011) .................................................... *passim*

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
517 F.3d 220 (5th Cir. 2008) ........................................................... 22

*In re Krynicki*,
983 F.2d 74 (7th Cir. 1992) ............................................................. 20

*In re L.A. Times Commc'ns LLC*,
28 F.4th 292 (D.C. Cir. 2022) .................................................. 22, 45, 48

*In re N.Y. Times Co.*,
828 F.2d 110 (2d Cir. 1987) ............................................................ 20

*In re Providence J. Co.*,
293 F.3d 1 (1st Cir. 2002) .......................................................... 20, 38

*In re The Herald Co.*,
734 F.2d 93 (2d Cir. 1984) ............................................................. 36

*In re Wash. Post Co.*,
807 F.2d 383 (4th Cir. 1986) ........................................................... 17

*June Med. Servs., L.L.C. v. Phillips*,
22 F.4th 512 (5th Cir. 2022) ..................................................... *passim*

*Lee v. Lee*,
   No. 19-CV-8814, 2022 WL 18278434 (C.D. Cal. Dec. 1, 2022) ...................... 34

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ...................................................................... 46

*Mike's Train House, Inc. v. Lionel, L.L.C.*,
   472 F.3d 398 (6th Cir. 2006) ............................................................. 34

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ................................................................... 21, 42

*Oregonian Publ'g Co. v. U.S. District Court*,
   920 F.2d 1462 (9th Cir. 1990) ........................................................ 31, 36

*Phoenix Newspapers, Inc. v. U.S. District Court*,
   156 F.3d 940 (9th Cir. 1998) ............................................................. 28

*Press-Enter. Co. v. Superior Court*,
   464 U.S. 501 (1984) ................................................................. *passim*

*Press-Enter. Co. v. Superior Court*,
   478 U.S. 1 (1986) ................................................................... *passim*

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980) ............................................................ 15, 17, 28

*S.E.C. v. Van Waeyenberghe*,
   990 F.2d 845 (5th Cir. 1993) ...................................................... *passim*

*Steering Comm. v. Exxon Mobil Corp.*,
   461 F.3d 598 (5th Cir. 2006) ......................................................... 25, 29

*United States v. Alcantara*,
   396 F.3d 189 (2d Cir. 2005) .......................................................... 16, 17

*United States v. Antar*,
   38 F.3d 1348 (3d Cir. 1994) ............................................................. 17

*United States v. Brooklier*,
   685 F.2d 1162 (9th Cir. 1982) ........................................................... 27

*United States v. Bus. of Custer Battlefield Museum & Store*,
   658 F.3d 1188 (9th Cir. 2011) ............................................................... 39

*United States v. Cannon*,
   No. 14-CR-87, 2015 WL 3751781 (W.D.N.C. June 16, 2015) ......................... 36

*United States v. Chang*,
   47 F. App'x 119 (3d Cir. 2002) ............................................................... 22

*United States v. Cronic*,
   466 U.S. 648 (1984) ............................................................................. 48

*United States v. Dare*,
   568 F. Supp. 2d 242 (N.D.N.Y. 2008) ............................................... 18, 22

*United States v. Edwards*,
   823 F.2d 111 (5th Cir. 1987) ................................................................. 44

*United States v. Eppinger*,
   49 F.3d 1244 (7th Cir. 1995) ................................................................. 17

*United States v. Gerena*,
   869 F.2d 82 (2d Cir. 1989) .................................................................... 20

*United States v. Harris*,
   204 F. Supp. 3d 10 (D.D.C. 2016) ................................................... 18, 22

*United States v. Hirsh*,
   No. 03-CR-58, 2007 WL 1810703 (E.D. Pa. June 22, 2007) ......................... 37

*United States v. Hitt*,
   473 F.3d 146 (5th Cir. 2006) ......................................................... 21, 38

*United States v. Holy Land Found. for Relief & Dev.*,
   624 F.3d 685 (5th Cir. 2010) .................................................. 22, 23, 44

*United States v. Huntley*,
   943 F. Supp. 2d 383 (E.D.N.Y. 2013) ...................................................... 36

*United States v. Index Newspapers LLC*,
   766 F.3d 1072 (9th Cir. 2014) ............................................................... 45

*United States v. James*,
663 F. Supp. 2d 1018 (W.D. Wash. 2009) ........................................................ 37

*United States v. Kravetz*,
706 F.3d 47 (1st Cir. 2013) ...................................................................... 22, 23

*United States v. Kushner*,
349 F. Supp. 2d 892 (D.N.J. 2005)................................................................... 22

*United States v. Molina*,
356 F.3d 269 (2d Cir. 2004) .......................................................................... 19

*United States v. Pearson*,
340 F.3d 459 (7th Cir. 2003),
*vacated on other grounds sub nom.*,
*Hawkins v. United States*, 543 U.S. 1097 (2005) ............................................. 36

*United States v. Rainiere*,
No. 18-CR-204, 2021 WL 4522298 (E.D.N.Y. Oct. 4, 2021) ........................... 18

*United States v. Raybould*,
130 F. Supp. 2d 829 (N.D. Tex. 2000) ................................................. 22, 23, 43

*United States v. Sealed Search Warrants*,
868 F.3d 385 (5th Cir. 2017) ............................................................. 16, 23, 40

*United States v. Shaffer*,
No. 21-CR-76, 2021 WL 4255617 (S.D. W. Va. Sept. 17, 2021).................... 22

*United States v. Stier*,
No. 17-CR-54, 2018 WL 1787888 (S.D. W. Va. Apr. 13, 2018)..................... 18

*United States v. Strevell*,
No. 05-CR-477, 2009 WL 577910 (N.D.N.Y. Mar. 4, 2009) .................... 18, 37

*Vance v. Wilson*,
No. 10-CV-300, 2011 WL 3794380 (E.D. Ky. Aug. 25, 2011) ...................... 36

*Wash. Post v. Robinson*,
935 F.2d 282 (D.C. Cir. 1991)................................................................ 32, 35

**Statutes**

18 U.S.C. § 1519 ................................................................ 4

18 U.S.C. § 1956 ................................................................ 4

18 U.S.C. § 3231 ................................................................ 1

18 U.S.C. § 3553 .............................................................. 19

18 U.S.C. § 371 ................................................................. 4

28 U.S.C. § 1291 ............................................................... 1

**Other Authorities**

Adam Dobrik, *Divisive, Zealous and Connected: The Investigator Behind the Ahsanis' US Deal*, Global Investigations Rev. (Nov. 12, 2021),
https://perma.cc/TS9X-ANWX .................................... 6, 33

Adam Dobrik, *DOJ Contacts Third Company Tied to Unaoil Corruption Allegations*, Global Investigations Rev. (May 16, 2016),
https://perma.cc/XJU3-2C83 .................................... 6

Adam Dobrik, *Unaoil Brothers Plead Guilty in US*,
Global Investigations Rev. (Oct. 30, 2019),
https://perma.cc/4QW6-MP99 .................................... 6

David Pegg & Rob Evans, *SFO Drops Investigation into Trio Accused of Energy Industry Bribes*, Guardian (June 25, 2019),
https://perma.cc/4MPE-RDRD .................................... 6

David Pegg & Rob Evans, *Unaoil Executives Admit Paying Multimillion-Dollar Bribes*, Guardian (Oct. 31, 2019),
https://perma.cc/SAA6-7GN4 .................................... 6

Kate Beioley, *Former Unaoil Executives Plead Guilty to Bribery*,
Fin. Times (Oct. 30, 2019),
https://perma.cc/AS49-Z3JQ .................................... 6

Kate Beioley, *SFO Accuses UK Nationals of Corrupt Payments in Unaoil Trial*,
Fin. Times (Jan. 23, 2020),
https://perma.cc/RLT2-FU6G .................................... 6

Order & Opinion,
  *In re Associated Press*,
  No. 5:22-mc-0011 (S.D. Tex. Nov. 28, 2022), slip op.,
  https://perma.cc/VR4V-F2L5 .................................................................. 48

Order,
  *In re Application of PennLive*,
  1:22-mc-00756 (M.D. Pa. Feb. 7, 2023), slip op.,
  https://perma.cc/ML4B-4V9Z ............................................................. 48

S. Rep. No. 98-225 (1983),
  *as reprinted in* 1984 U.S.C.C.A.N. 3182 ........................................... 19

Sir David Calvert-Smith, *Independent Review into the Serious Fraud Office's
  handling of the Unaoil Case – R v Akle & Anor*,
  Att'y Gen.'s Off. (July 21, 2022),
  https://perma.cc/YF5U-EDLN ............................................................ 33

*Statement of Reasons*, Form AO 245B,
  https://www.uscourts.gov/sites/default/files/ao245b.pdf ................... 19

*The Unaoil Bribery Scandal*, Spotlight on Corruption (Mar. 30, 2022),
  https://perma.cc/KBY3-N4XK ............................................................ 33

*Unaoil: The Company that Bribed the World*, The Age (2016),
  https://perma.cc/Q2QV-FT97 ............................................................... 3

# STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to the collateral order

doctrine and 28 U.S.C. § 1291. *See Bradley ex rel. AJW v. Ackal*, 954 F.3d 216,

223 (5th Cir. 2020). "Appealable collateral orders include 'those district court

decisions that are conclusive, that resolve important questions completely separate

from the merits, and that would render such important questions effectively

unreviewable on appeal from final judgment in the underlying action.'" *Id.* at 222–

23 (quoting *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 925 (5th Cir.

1996)). As this Court has held, district courts' sealing and closure orders,

including orders denying motions to unseal filed by members of the press and

public, satisfy the requirements of the collateral order doctrine. *See id.* at 223; *In*

*re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 174 (5th Cir. 2011); *Davis*, 78 F.3d at

926.

The district court had jurisdiction over the underlying criminal case pursuant

to 18 U.S.C. § 3231. Intervenors-Appellants timely filed their notice of appeal on

March 9, 2023. *See* ROA.695; Fed. R. App. P. 4(a)(4)(A)(iv).

**STATEMENT OF THE ISSUES**

1. Whether the district court erred in holding a portion of the defendant's sentencing hearing behind closed doors, without providing the public, including the intervenor news organizations, notice or an opportunity to object to the closure, and by not releasing a transcript of that closed proceeding.

2. Whether the district court erred in denying intervenor news organizations' motion to unseal the sentencing memoranda and other judicial records in defendant's criminal prosecution, such that those records should be unsealed in their entirety—or with, at most, only limited redactions necessitated by a compelling interest—pursuant to the First Amendment and/or common law.

3. Whether the district court's reliance on wholly sealed arguments made in opposition to intervenor news organizations' motion to unseal denied the news organizations a meaningful opportunity to be heard.

**STATEMENT OF THE CASE**

This appeal arises from the district court's denial of a motion to unseal filed by Financial Times Ltd., Global Investigations Review, and The Guardian (collectively, "Intervenors-Appellants") that sought access to sealed judicial records filed in connection with the January 30, 2023 sentencing of defendant Saman Ahsani in *United States v. Ahsani*, No. 4:19-CR-147-1 (S.D. Tex.) (hereinafter, the "Ahsani Prosecution").

## I.     The Ahsani Prosecution and Saman Ahsani's Sentencing.

The Ahsani Prosecution arose out of what has been called the "world's biggest bribe scandal," *Unaoil: The Company that Bribed the World*, The Age (2016), https://perma.cc/Q2QV-FT97: a "pervasive and wide-ranging international corruption scheme" spearheaded by Saman Ahsani and his brother, Cyrus Allen Ahsani, in their former roles as executives of Monaco-based energy consultancy Unaoil, ROA.713.[1] Over the course of more than a decade, according to the United States (the "Government"), Unaoil paid "millions of dollars in bribes to corrupt government officials in the Middle East, Africa and Central Asia" in order "to win foreign government contracts for itself as well as 27 multinational oil and gas companies including companies headquartered in the United States and companies listed on U.S. stock exchanges." *Id.* The effects of its bribery scheme

---

[1]     References to Ahsani herein refer to Saman Ahsani unless otherwise stated.

3

were far-reaching. As the Government argued in the Ahsani Prosecution, "countries were destabilized by this corruption," and "the rule of law" undermined. *Id*. One report found, for example, that the "pervasive corruption" facilitated by Unaoil had "destabilised efforts to secure peace in Iraq and contributed to the rise of ISIS in the country." ROA.555.

Ahsani played a central role in the Unaoil corruption scheme; he negotiated and paid bribes, enabled his father's and brother's payment of bribes, and destroyed evidence. ROA.713–14. In April 2018, Ahsani was charged by the Government with one count of conspiracy to violate the Foreign Corrupt Practices Act (FCPA), which carries a maximum sentence of five years, one count of conspiracy to commit money laundering, which carries a maximum sentence of twenty years, and one count of destruction of evidence, which also carries a maximum sentence of twenty years. ROA.132; *see* 18 U.S.C. §§ 371, 1956, 1519.[2]

On March 25, 2019, Ahsani pleaded guilty in the U.S. District Court for the Southern District of Texas to one count of conspiracy to violate the FCPA.

---

[2] Ahsani, a citizen of the United Kingdom, also faced law enforcement scrutiny there. *See* ROA.483, ROA.575–76. U.K. investigators ultimately agreed to drop their case in favor of the Government's on the condition that Saman and Cyrus Allen Ahsani's U.S. plea agreements include "an express term requiring them to co-operate with" law enforcement agencies in both countries. ROA.577. The move generated significant controversy and criticism of officials in the United Kingdom, and the fallout was the subject of extensive reporting in U.S. and U.K. media. *See* ROA.555, ROA.576–79, ROA.669–70.

ROA.2791.  On January 30, 2023, Ahsani was sentenced to twelve months and one day in prison.  ROA.680–85.[3]

The Government argued during the public portion of Ahsani's sentencing hearing, when recommending the sentence ultimately imposed, that the central role Ahsani had played in the far-reaching Unaoil corruption scheme was "not the whole story."  ROA.714.  According to the Government, Ahsani had "undergone a transformation," expressing remorse for his acts and proceeding to "do[] the right thing in an extraordinary and exemplary way."  *Id.*  Specifically, as discussed in official documents, and as has been widely reported by the news media in both the United States and United Kingdom, Ahsani has cooperated with law enforcement authorities in both nations.  *See* ROA.468–69, ROA.476–671.  As Ahsani himself said during the public portion of his sentencing hearing, he has worked "to assist the U.S." and experienced "the benefits of true cooperation."  ROA.721.

## II.     Intervenors-Appellants' first motion to unseal records and access proceedings in the Ahsani Prosecution.

Since 2016, Intervenors-Appellants—as well as other members of the news media in the United States, United Kingdom, and around the world—have reported extensively on the "vast" Unaoil corruption scandal, the Ahsani Prosecution, and

---

[3]     Cyrus Allen Ahsani also pleaded guilty to one count of conspiracy to violate the FCPA on March 25, 2019.  ROA.2666.  His sentencing is scheduled for August 21, 2023 before the Honorable Andrew S. Hanen.  ROA.2191.

Saman and Cyrus Allen Ahsani's "'spectacular' level of cooperation" with authorities. *See, e.g.*, ROA.109–11 (Adam Dobrik, *DOJ Contacts Third Company Tied to Unaoil Corruption Allegations*, Global Investigations Rev. (May 16, 2016), https://perma.cc/XJU3-2C83); ROA.665–71 (Adam Dobrik, *Divisive, Zealous and Connected: The Investigator Behind the Ahsanis' US Deal*, Global Investigations Rev. (Nov. 12, 2021), https://perma.cc/TS9X-ANWX); *see also, e.g.*, ROA.98–99 (Kate Beioley, *SFO Accuses UK Nationals of Corrupt Payments in Unaoil Trial*, Fin. Times (Jan. 23, 2020), https://perma.cc/RLT2-FU6G); ROA.113–14 (David Pegg & Rob Evans, *Unaoil Executives Admit Paying Multimillion-Dollar Bribes*, Guardian (Oct. 31, 2019), https://perma.cc/SAA6-7GN4); ROA.101–02 (Kate Beioley, *Former Unaoil Executives Plead Guilty to Bribery*, Fin. Times (Oct. 30, 2019), https://perma.cc/AS49-Z3JQ); ROA.104–07 (Adam Dobrik, *Unaoil Brothers Plead Guilty in US*, Global Investigations Rev. (Oct. 30, 2019), https://perma.cc/4QW6-MP99); ROA.116–17 (David Pegg & Rob Evans, *SFO Drops Investigation into Trio Accused of Energy Industry Bribes*, Guardian (June 25, 2019), https://perma.cc/4MPE-RDRD).

On June 19, 2020, in furtherance of their reporting, Intervenors-Appellants moved to intervene in the Ahsani Prosecution for the limited purpose of obtaining an order (1) unsealing sealed judicial records that had been filed to that date, including transcripts of closed proceedings that had been held before the district

court, and (2) ensuring public access to the upcoming proceedings and future filings in the Ahsani Prosecution, including defendants' sentencing proceedings. ROA.78–117.  At the time, almost all judicial records that had been filed in the Ahsani Prosecution, including transcripts of closed proceedings, were sealed in their entirety, hampering the news organizations' ability to report on the case.  *Id.* Intervenors-Appellants argued that such secrecy violated their presumptive rights of access to judicial records and court proceedings under the First Amendment and common law.  *Id.*

On July 28, 2020, the district court, the Honorable Vanessa D. Gilmore, granted Intervenors-Appellants' motion to intervene and ordered that the sealed records be unsealed except for limited redactions and one sealed document. ROA.2794.  Judge Gilmore further ordered that Intervenors-Appellants and the public would receive notice of—and access to—future proceedings in the Ahsani Prosecution, including, specifically, the defendants' sentencing proceedings.  *Id.*

### III.  Intervenors-Appellants' second motion to unseal records in the Ahsani Prosecution.

Shortly before Saman Ahsani's January 30, 2023 sentencing, the parties filed a number of documents entirely under seal, including sentencing memoranda, ECF Nos. 115, 116, Ahsani's statement of no objections to the presentence report, ECF No. 113, and an unidentified "sealed event," ECF No. 118.  ROA.2796.

On January 24, 2023, Intervenors-Appellants filed a motion to unseal the parties' sentencing memoranda and other sealed documents, invoking their presumptive right to inspect those court records under the First Amendment and common law.  ROA.461–75.[4]  The motion argued, *inter alia*, that the press and public have not only a common law but also a First Amendment right to attend sentencing proceedings and that right of access extends to documents filed in connection with sentencing proceedings; that there could be no compelling interest in sealing all sentencing-related documents in the Ahsani Prosecution in their entirety; and that continued sealing or redaction of references to Saman and Cyrus Allen Ahsani's cooperation with law enforcement authorities could not be justified because extensive information about that cooperation had become public through official sources and news coverage.  *Id*.  The district court did not issue a ruling or address in open court Intervenors-Appellants' motion to unseal before or during Ahsani's sentencing hearing on January 30.  ROA.710–24.

According to the public docket in the Ahsani Prosecution, Saman Ahsani was to be sentenced on January 30, 2023 at 1 p.m. in Courtroom 9D.  ROA.460. Before the public portion of Ahsani's sentencing hearing, however, the district

---

[4]     As this Court has recognized, sentencing memoranda are distinct from presentence reports.  *See In re Hearst Newspapers*, 641 F.3d at 181 n.14. Intervenors-Appellants did not move to unseal Ahsani's presentence report. ROA.462.

court conducted a closed proceeding in chambers with the parties and their counsel.  ECF No. 142; ROA.2799–800.  Though the transcript of that proceeding is sealed in its entirety, *id.*, the record indicates that the district court heard arguments in chambers that went to the merits of the sentence Ahsani should receive.  For example, during the public portion of Ahsani's sentencing hearing, when advocating that his client receive a sentence of probation, Ahsani's counsel referred to "what was presented *earlier* to Your Honor" and "all the factors that have been described to Your Honor here *and earlier*[.]"  ROA.719 (emphasis added).  Members of the press and public, including Intervenors-Appellants, were given no notice that a closed proceeding would precede the public portion of Ahsani's sentencing hearing, as it was not reflected on the public docket, and they had no opportunity to object to closure of that proceeding.

After Ahsani's sentencing, on February 8, 2023, Intervenors-Appellants filed a letter with the district court requesting a briefing schedule on their still-pending motion.  ROA.686–88.  Intervenors-Appellants' letter reiterated that their motion to unseal extended to "any judicial documents—including any transcripts of any proceedings—concerning [Ahsani's] sentence," the sealed statement of reasons

docketed at ECF No. 129, and other, sealed judicial records which had been docketed at ECF Nos. 118, 122, and 130.[5]  ROA.2796–97.

## IV.    The district court's order.

On February 23, 2023 the district court, the Honorable Andrew S. Hanen, entered the appealed-from order denying Intervenors-Appellants' motion to unseal. ROA.690–91 (hereinafter, the "Order").  The Order relied on the portion of Judge Gilmore's 2020 unsealing order applying limited redactions to mentions of defendants' cooperation, which the district court "f[ound] no good reason to set aside."  ROA.690.  The Order declined to unseal any portion of the sealed records at issue, concluding that redaction "would essentially destroy any value the documents have."  ROA.691.  The Order did not address Intervenors-Appellants' arguments that there could be no ongoing interest in sealing references to defendants' cooperation with law enforcement authorities because that cooperation was now public knowledge, nor did it describe how references to defendants' cooperation could presently harm defendants or any ongoing investigation.  The Order did not discuss—or cite—any legal precedent.  ROA.690–91.

---

[5]     While the transcript of the closed portion of Ahsani's sentencing hearing— now docketed under seal at ECF No. 142—was not reflected on the public docket at the time Intervenors-Appellants' letter was filed, as that letter made expressly clear, Intervenors-Appellants sought access to transcripts of any sealed proceedings related to Ahsani's sentencing.

The Order also disclosed publicly, for the first time, that on February 7, 2023, the parties had filed a sealed joint response in opposition to Intervenors-Appellants' motion to unseal. ROA.690. The public docket refers to this filing only as a "sealed event." ROA.2797. Intervenors-Appellants did not have notice of—nor an opportunity to respond to—the parties' joint opposition before the district court entered its Order.

On March 9, Intervenors-Appellants timely appealed. ROA.695. On March 16, Intervenors-Appellants moved to expedite their appeal, citing the urgent public interest in access to the sealed records at issue, as well as the upcoming sentencing of Cyrus Allen Ahsani before the district court. Doc. No. 17. The Court granted that motion on March 21 and set an expedited briefing schedule; this brief is filed in accordance therewith. *See* Doc. Nos. 25-1, 40.

## SUMMARY OF ARGUMENT

Intervenors-Appellants seek access to the sentencing memoranda and other sealed judicial records filed in connection with the January 30 sentencing of Saman Ahsani, including the transcript of the non-public portion of his sentencing hearing.

The First Amendment and common law guarantee members of the public and press, like Intervenors-Appellants, the presumptive right to attend sentencing proceedings in criminal cases and to inspect judicial records filed in connection with those proceedings. Public access to criminal cases allows "members of the

public [to] observe whether justice is being carried out," thus serving as "an effective restraint on possible abuse of judicial power" and "build[ing] public confidence in the criminal justice system." *In re Hearst Newspapers*, 641 F.3d at 179 (citations and internal quotation marks omitted). "[T]he need for public access" is "heighten[ed]" in the sentencing context, especially when the defendant has pled guilty, because in the "vast majority of criminal cases, there [is] no trial, but only a guilty plea," and "there is no jury" at sentencing. *Id.* at 177, 179.

Under this Court's precedent, the district court was required to determine if, on the factual record presently before it, some overriding interest warranted curtailing the public's rights of access with respect to Ahsani's sentencing and, if so, to narrowly tailor any restrictions on the public's rights of access to that overriding interest. *Id.* at 181 (quoting *Press-Enter. Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 9–10 (1986)). Procedurally, the district court also was required to "provide the press and public with notice and an opportunity to be heard before closing" any part of Ahsani's sentencing hearing, and before sealing the transcript of that proceeding and other judicial records, like the parties' sentencing memoranda, filed in connection with Ahsani's sentencing. *Id.* at 183.

The district court did not do so. Instead, it held a portion of Ahsani's sentencing hearing behind closed doors without any notice to the public, and it denied public access to any portion of the judicial records at issue in this appeal,

including the transcript of that closed proceeding. In denying Intervenors-Appellants' motion to unseal judicial records concerning Ahsani's sentencing, the district court stated only that it found "no good reason" to "set aside" a three-year-old unsealing order that permitted the redaction (in different judicial records) of references to Saman and Cyrus Allen Ahsani's (now-public) cooperation with law enforcement. ROA.690–91. The district court's failure to follow proper procedures and to apply the correct substantive legal standards under either the First Amendment or common law are legal errors that necessitate reversal.

Applying the correct legal standards to the facts of this case, it is clear the sentencing memoranda and other sealed judicial records related to Ahsani's sentencing, including the transcript of the non-public portion of his sentencing hearing, must be immediately unsealed with, at most, targeted redactions supported by specific factual findings. There is no countervailing—let alone compelling—interest that justifies near-complete secrecy as to the basis for the sentence imposed on Ahsani by the district court. His cooperation with law enforcement authorities is public knowledge; it has been discussed in numerous news reports, court records, official documents, and official statements, as well as by Ahsani himself during the public portion of his sentencing hearing, and by the district court in the appealed-from Order. *See* ROA.476–671, ROA.690–91, ROA.721–22. In light of the extensive information in the public domain about the Ahsani Prosecution and

Saman and Cyrus Allen Ahsani's cooperation with U.S. and U.K. authorities, there can be no added risk of harm from unsealing judicial records that mention or refer to that cooperation. As this Court has explained, publicly available information and records "*already* belong to the people" and cannot properly be sealed. *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 520–21 (5th Cir. 2022) (emphasis in original). Moreover, under the common law, the public's especially strong interest in the Ahsani Prosecution—a factor not considered by the district court—weighs heavily in favor of public access here. ROA.690–91.

The district court further erred as a matter of law by reaching the erroneous result reflected in its Order based on secret arguments to which neither the public nor Intervenors-Appellants have had any degree of access. Permitting the Government and Ahsani to oppose unsealing in a wholly sealed filing that Intervenors-Appellants were given no notice of—and no ability to respond to— undermines the public's "strong interest in monitoring . . . the positions that its elected officials and government agencies take in litigation," *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014), as well as "the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions," *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986). For this reason, too, this Court should reverse.

Saman Ahsani was prosecuted for his leading role in a vast global corruption scheme. His prosecution by the Government and his sentencing by the district court are of unquestionable interest to the public, and no overriding interest justifies shielding the judicial records at issue in this appeal, in their entirety, from public scrutiny. For the reasons herein, Intervenors-Appellants respectfully request that this Court reverse the Order and direct the district court to immediately unseal the following sealed judicial records with, at most, narrowly tailored redactions shown to be necessitated by a compelling, countervailing interest, and supported by specific factual findings: ECF Nos. 113, 115, 116, 118, 122, 129, 130, and 142.

## ARGUMENT

### I. The press and public have a constitutional and common law right of access to sentencing proceedings and related judicial records.

Said to predate even the Constitution itself, the right of the public to attend criminal proceedings is deeply rooted in American history and "an indispensable attribute" of our criminal justice system. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564–68, 569 (1980). Based on an "unbroken, uncontradicted history, supported by reasons as valid today as in centuries past," the Supreme Court has recognized "that a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Id*. at 573. Openness "enhances . . . the basic fairness of the criminal trial," as well as "the appearance of fairness so essential to public confidence in the system." *Press-Enter. Co. v. Superior Court*

(*Press-Enterprise I*), 464 U.S. 501, 508 (1984).  "This rationale" applies fully in the sentencing context, which is "'an integral part of a criminal prosecution.'"  *In re Hearst Newspapers*, 641 F.3d at 177, 180 (quoting *United States v. Alcantara*, 396 F.3d 189, 197 & n.7 (2d Cir. 2005)).  This Circuit recognizes two sources of the public's right of access: the stronger "First Amendment right of access and the common law qualified right of access."  *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 n.1 (5th Cir. 2017).  Both sources are implicated here.

A.    **The First Amendment guarantees the public a presumptive right to attend sentencing proceedings and inspect sentencing-related records.**

This Court has "conclude[d], as have the other courts that have considered this question, that the public and press have a First Amendment right of access to sentencing proceedings."  *In re Hearst Newspapers*, 641 F.3d at 176–77.  Sentencing proceedings satisfy the Supreme Court's "two-part test for determining whether there is a First Amendment right of access to a particular criminal proceeding."  *Id.* at 175 (citing *Press-Enterprise II*, 478 U.S. at 8–9).  First, they "have historically been open to the press and public."  *Id.* at 177 (citing *Alcantara*, 396 F.3d at 197 n.7).  Second, "public access plays a 'significant positive role,' in a sentencing hearing."  *Id.* at 179 (quoting *Press-Enterprise II*, 478 U.S. at 8–9).  Just as open trials curtail the "'possible abuse of judicial power,'" openness in the sentencing context "'operates to check any temptation that might be felt by either

the prosecutor or the court . . . to seek or impose an arbitrary or disproportionate sentence.'" *Id.* at 179 (first quoting *Richmond Newspapers*, 448 U.S. at 596; then quoting *In re Wash. Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986)). Open sentencing proceedings also bolster public confidence in the justice system by "allow[ing] the public to observe whether the defendant is being justly sentenced, especially where the court, rather than a jury, is determining the sentence." *Id.* at 179–80 (citing *United States v. Eppinger*, 49 F.3d 1244, 1253 (7th Cir. 1995)). Additionally, openness "promotes more accurate fact-finding," contributes "to an informed public debate over [sentencing] laws," and "provid[es] an outlet for community concern, hostility, and emotion." *Id.* at 180 (citations and internal quotation marks omitted). "The First Amendment right of access to a sentencing proceeding is especially salient in this case, where, as in the vast majority of criminal cases, there was no trial, but only a guilty plea." *Id.* at 177 (citing *Alcantara*, 396 F.3d at 199).

The constitutional right of access applicable to sentencing proceedings extends, naturally, to transcripts of those proceedings, including the sealed transcript of the non-public portion of Ahsani's January 30 sentencing hearing. ROA.2799–800; *see United States v. Antar*, 38 F.3d 1348, 1361 (3d Cir. 1994) ("[T]he First Amendment right of access must extend equally to transcripts as to live proceedings."). And, as this Court has recognized, releasing a public

transcript "within a reasonable time" after a closed hearing furthers "the constitutional values sought to be protected by holding open proceedings." *In re Hearst Newspapers*, 641 F.3d at 181 (quoting *Press-Enterprise I*, 464 U.S. at 512).

"[C]ourts of appeals have also recognized a First Amendment right of access to documents filed for use in sentencing proceedings." *Id.* at 176 (collecting cases). Sentencing memoranda, in particular, "historically have been open to the press and general public," and "public access to sentencing memoranda plays a significant and positive role in the functioning of" sentencing, for the same reasons as access to the proceedings themselves. *United States v. Harris*, 204 F. Supp. 3d 10, 15 (D.D.C. 2016); *see also United States v. Stier*, No. 17-CR-54, 2018 WL 1787888, at *3 (S.D. W. Va. Apr. 13, 2018); *United States v. Dare*, 568 F. Supp. 2d 242, 244 (N.D.N.Y. 2008). Simply put, "[t]he defendant, the government and the public all have a right to know what information influences a judicial assessment of reasonable punishment." *United States v. Strevell*, No. 05-CR-477, 2009 WL 577910, at *4 (N.D.N.Y. Mar. 4, 2009).[6]

Here, in addition to the parties' sentencing memoranda, ECF Nos. 115, 116, Intervenors-Appellants also moved to unseal other "documents filed for use in

---

[6]  In addition, some federal courts have held that presumptive public access to sentencing memoranda is guaranteed by the First Amendment because it is "an essential corollary to the" public's right to attend the "sentencing proceedings" themselves. *United States v. Rainiere*, No. 18-CR-204, 2021 WL 4522298, at *4 (E.D.N.Y. Oct. 4, 2021).

[Ahsani's] sentencing proceedings," including the "sealed events" docketed at ECF Nos. 118 and 122, Ahsani's statement of no objections to the presentence report, ECF No. 113, and the district court's statement of reasons, ECF No. 129. *See* ROA.462, ROA.465, ROA.686–88; *In re Hearst Newspapers*, 641 F.3d at 176.[7]

Finally, the constitutional right of access also attaches to legal briefs, including the parties' joint brief in opposition to Intervenors-Appellants' motion to unseal, which was docketed as a "sealed event" at ECF No. 130. ROA.686–88. Briefs are an essential part of any court proceeding, and thus presumptively public under the First Amendment, because they "contain the substance of a movant's

---

[7]    In addition to the constitutional and common law presumptions of public access, the statute requiring a district court to file a statement of reasons indicates that it—like other judicial records filed in connection with sentencing—is presumptively public. *See* 18 U.S.C. § 3553(c) (requiring courts to state their reasons for imposing a particular sentence "in open court," and requiring that "a transcription or other appropriate public record of the court's statement of reasons" be provided to the Sentencing Commission); *see also United States v. Molina*, 356 F.3d 269, 277 (2d Cir. 2004) (a statement of reasons "enable[s] the public to learn why [a] defendant received a particular sentence"); S. Rep. No. 98-225, at 80 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3263 (contemplating that a district court's "statement of reasons" would "inform[] the defendant *and the public* of the reasons for the sentence" (emphasis added)). Intervenors-Appellants are aware that the form promulgated by the Judicial Conference for a court's statement of reasons states that it is "not for public disclosure." *See Statement of Reasons*, Form AO 245B, https://www.uscourts.gov/sites/default/files/ao245b.pdf. To the extent, however, that language is interpreted to either mandate or authorize automatic sealing of statements of reasons—including the statement of reasons filed in connection with Ahsani's sentencing—without the district court being required to make any specific factual findings as to the necessity of sealing in a particular case, it does not pass constitutional muster; such a requirement would be unconstitutional both on its face and as applied here.

argument or a nonmovant's opposition: pertinent facts, case law, statutory references, and legal reasoning." *In re Providence J. Co.*, 293 F.3d 1, 4–5 (1st Cir. 2002); *see also In re Krynicki*, 983 F.2d 74, 75–77 (7th Cir. 1992) (noting that, "by constitutional command," "briefs themselves, including all of the legal argument, belong in the public domain"); *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) (holding constitutional right of access attaches to "briefs and memoranda"). Access to legal briefing is especially important when, as with Intervenors-Appellants' motion, "no hearing [wa]s held," and the district court's Order was "based solely upon the motion papers." *In re N.Y. Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987).

When, as here, the First Amendment right of access applies, sealing is proper *only* if it is found to be necessitated by a compelling government interest. And, when such a compelling interest is shown, sealing must be narrowly tailored; it can be no broader than necessary to serve that compelling interest. *Press-Enterprise I*, 464 U.S. at 510; *In re Hearst Newspapers*, 641 F.3d at 181. Thus, to close a proceeding or seal a judicial record to which the First Amendment right of access applies, a district court must set forth written findings demonstrating that such closure or sealing is necessary, including an explanation as to why less-restrictive alternatives to such closure or sealing—like redaction—would not suffice. *Press-Enterprise I*, 464 U.S. at 510; *In re Hearst Newspapers*, 641 F.3d

at 181; *United States v. Hitt*, 473 F.3d 146, 154 (5th Cir. 2006) (emphasizing that courts "must consider reasonable alternatives to closure").  Additionally, "[g]iven the weight of the right of access, . . . courts must provide the press and public with notice and an opportunity to be heard before" ordering closure or sealing.  *In re Hearst Newspapers*, 641 F.3d at 183.

## B. The press and public have a qualified common law right to inspect sentencing-related judicial records.

Intervenors-Appellants also have a presumptive common law right to inspect the sealed judicial records at issue, including the parties' sealed sentencing memoranda, the transcript of the non-public portion of Ahsani's sentencing hearing, the parties' joint brief in opposition to Intervenors-Appellants' unsealing motion, the relevant "sealed event" filings, Ahsani's statement of no objections to the presentence report, and the district court's statement of reasons.  ROA.2796–99.

"[T]he public has a common law right to inspect and copy judicial records." *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  And this Court has applied that common law right of access to a wide range of documents created by or filed with the courts.  *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021); *Bradley*, 954 F.3d at 225; *Van Waeyenberghe*, 990 F.2d at 848–49.

Sentencing memoranda are "judicial records" filed with and relied upon by district courts, and are presumptively open to the public under the common law. *See United States v. Kravetz*, 706 F.3d 47, 56 (1st Cir. 2013); *United States v. Chang*, 47 F. App'x 119, 123 (3d Cir. 2002); *United States v. Shaffer*, No. 21-CR-76, 2021 WL 4255617, at *2 (S.D. W. Va. Sept. 17, 2021) ("Courts addressing this issue consistently hold that sentencing memoranda should not be kept under seal because the documents are 'judicial records' and, absent unusual circumstances, do not contain the type of information that typically outweighs the public's right of access."); *Harris*, 204 F. Supp. 3d at 16; *United States v. Kushner*, 349 F. Supp. 2d 892, 905 (D.N.J. 2005); *Dare*, 568 F. Supp. 2d at 244; *United States v. Raybould*, 130 F. Supp. 2d 829, 833 (N.D. Tex. 2000). Transcripts—including the transcript of the non-public portion of Ahsani's sentencing hearing—are also judicial records that are presumptively public under the common law. *See Bradley*, 954 F.3d at 227; *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 226 (5th Cir. 2008); *Van Waeyenberghe*, 990 F.2d at 848–49. So, too, are legal briefs, like the parties' joint sealed opposition to Intervenors-Appellants' motion to unseal. *See United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 689 (5th Cir. 2010) (common law presumption of access extended to "pleadings, records, documents, orders, and other papers concerning . . . [party's] Motion"); *see also In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 296 (D.C. Cir. 2022)

(holding government's brief in opposition to unsealing was "a classic example of a document intended to influence judicial decision-making and is therefore a judicial record" subject to common law right of access).

Like the constitutional right of public access, the common law right "promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." *Sealed Search Warrants*, 868 F.3d at 395 (citing *Van Waeyenberghe*, 990 F.2d at 849). "These salutary effects . . . support public access to sentencing memoranda" and other documents that "bear directly on criminal sentencing in that they seek to influence the judge's determination of the appropriate sentence." *Kravetz*, 706 F.3d at 56–57. "If those aspects of a criminal case were to be kept secret, the public and the press would have reason to question the trustworthiness of the judicial process and whether judicial and prosecutorial abuses might be occurring." *Raybould*, 130 F. Supp. 2d at 833. Indeed, "[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions"—like the punishment to be imposed on a defendant—"are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Holy Land Found. for Relief & Dev.*, 624 F.3d at 690 (citation and internal quotation marks omitted).

This Court has instructed lower courts, when the common law right applies, "[to] be ungenerous with their discretion to seal judicial records." *Binh Hoa Le*, 990 F.3d at 418; *see also June Med. Servs.*, 22 F.4th at 519–20 ("[W]e heavily disfavor sealing information placed in the judicial record."); *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987) ("The district court's discretion to seal the record of judicial proceedings is to be exercised charily[.]"). The district court must conduct a "case-by-case, document-by-document, line-by-line" analysis, with any decision to seal a record supported by on-the-record "reasons" that are "explained at a level of detail that will allow for this Court's review." *Binh Hoa Le*, 990 F.3d at 419 (citations and internal quotation marks omitted). And, in determining whether records subject to the common law right should be sealed, in whole or in part, a district court must take into consideration the public's interest in access to the documents. *See id.*; *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211–12 (5th Cir. 2019).

II.     **The district court committed reversible error under both the First Amendment and common law when it closed part of Ahsani's sentencing without public notice and sealed the transcript of that closed proceeding.**

As a matter of constitutional law, a district court contemplating closing a sentencing proceeding in whole or in part errs if it fails to "follow two procedural requirements . . . (1) to give public notice of contemplated closure of the proceeding, and (2) to give interested parties, such as the [press], an opportunity to

be heard before the sentencing proceeding [i]s closed." *In re Hearst Newspapers*, 641 F.3d at 181.  In addition, "courts of appeals . . . have uniformly required adherence to such procedural safeguards" with respect to the "sealing of documents to which there is a First Amendment right of access," including "documents filed for use in sentencing proceedings." *Id.* at 176, 182.

While this Court, as a general matter, reviews for abuse of discretion a district court's consideration of the case-specific interests at stake in a request to seal a judicial record or close a proceeding, this Court reviews "the district court's application of the appropriate legal standard de novo." *Ford v. City of Huntsville*, 242 F.3d 235, 241 (5th Cir. 2001); *see also In re Hearst Newspapers*, 641 F.3d at 174 (reviewing First Amendment questions *de novo*).  Indeed, "a [district] court by definition abuses its discretion when it applies an incorrect legal standard," and, accordingly, this Court "review[s] such errors *de novo*." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006).

Here, the district court erred by holding a substantive portion of Ahsani's sentencing proceeding behind closed doors without providing the public any notice of or opportunity to object to its closure.  *See* ROA.2799.  While the district court docketed notice of the *public* portion of Ahsani's sentencing, ROA.460, it did not provide public notice on the docket or otherwise of its intent to close a portion of Ahsani's sentencing—or to hold a closed proceeding of any kind that day—in clear

violation of this Court's holding in *Hearst Newspapers*.  And the district court's failure to provide public notice of its intent to close a portion of Ahsani's sentencing hearing was especially problematic because Judge Gilmore's 2020 order expressly provided that "[Intervenors-Appellants] and the public shall receive notice of and access to future proceedings in this case, *including the defendants sentencing*."  ROA.2794 (emphasis added).  As a result of that ruling, members of the public—including Intervenors-Appellants—had no reason to suspect that any portion of Ahsani's sentencing would be closed.

Whether by "docket[ing] the motion" to close part of the proceeding or by "simply plac[ing] a notice on the docket that there [was] a motion to close a proceeding," the district court was obligated to provide the public *some* form of advance notice, and "[a]t the very least," to "permit interested parties to submit briefs on whether a proceeding should be closed."  *In re Hearst Newspapers*, 641 F.3d at 183–84.  This Court need not decide exactly what form that notice and opportunity to be heard should have taken in this case "because the district court gave the press and public no notice, and no opportunity to be heard, whatsoever" before closing a portion of Ahsani's sentencing proceeding.  *Id.*[8]  That failure, standing alone, is reversible error.  *Id.*

---

[8]     As in *Hearst Newspapers*, the fact that the district court had before it Intervenors-Appellants' "arguments against continued *sealing of documents*" was

The district court compounded that error by sealing—and maintaining under seal—the transcript of the non-public portion of Ahsani's sentencing proceeding. As discussed above, both the First Amendment and common law rights of access attach to the transcript. And while after-the-fact public access to the transcript of a closed proceeding is no "substitute for presence at the proceeding itself," *Gannett Co. v. DePasquale*, 443 U.S. 368, 442 n.17 (1979) (Blackmun, J., concurring in part and dissenting in part), a transcript provides an essential "opportunity to scrutinize" what occurred at the closed hearing, *id.* at 393 (majority opinion).

Had the district court released the transcript "within a reasonable time" after Ahsani's closed sentencing, it would have minimized the intrusion on "the constitutional values sought to be protected by holding open proceedings." *In re Hearst Newspapers*, 641 F.3d at 181 (quoting *Press-Enterprise I*, 464 U.S. at 512); *see also ABC, Inc. v. Stewart*, 360 F.3d 90, 100 (2d Cir. 2004) (recognizing that "provision of a transcript may well be the best available substitute" when contemporaneous access to a proceeding has been denied); *United States v. Brooklier*, 685 F.2d 1162, 1172 (9th Cir. 1982). Instead, the district court sealed the transcript in its entirety with no notice to the public, and having made no on-the-record findings that such sealing is necessitated by a compelling interest, and

---

no substitute for notice and an "opportunity to make arguments . . . regarding access to and *closure of sentencing proceedings*." *Id.* at 186 (emphasis added).

the least restrictive means of furthering that interest.[9]  The sealing of the transcript,

too, was reversible error.  *See, e.g.*, *In re Hearst Newspapers*, 641 F.3d at 182

("[I]f a court contemplates sealing a . . . transcript, it must provide sufficient notice

to the public and press to afford them the opportunity to object or offer

alternatives." (quoting *Phoenix Newspapers, Inc. v. U.S. District Court*, 156 F.3d

940, 949 (9th Cir. 1998))); *id.* at 187 (reversing where "trial judge made no

findings to support closure; no inquiry was made as to whether alternative

solutions would have met the need to ensure fairness; there was no recognition of

any right under the Constitution for the public or press to attend the trial" (quoting

*Richmond Newspapers*, 448 U.S. at 580–81)).

**III.    The district court committed reversible error under both the First
Amendment and common law when it denied Intervenors-
Appellants' motion to unseal judicial records filed in connection with
Ahsani's sentencing.**

**A.    The district court failed to apply the correct legal standard under
the First Amendment.**

In addition to closing part of Ahsani's sentencing proceeding, the district

court also denied the public access to nearly all of the judicial records filed in

connection with his sentencing.  According to the Order denying Intervenors-

Appellants' motion to unseal those documents, it did so to conceal references to

---

[9]    As discussed in more detail below, to the extent the district court did so to
conceal mentions of Saman and Cyrus Allen Ahsani's cooperation with law
enforcement, it erred because that cooperation is already public knowledge.

Ahsani's cooperation with law enforcement, despite the fact that the press and public are already well aware of his cooperation, and Ahsani himself discussed it in open court. ROA.690–91. Such secrecy strikes at the core of the presumption of public access guaranteed by the First Amendment and common law—a presumption the district court wholly failed to apply.

As a matter of constitutional law, a party advocating for sealing a judicial record filed in connection with a criminal defendant's sentencing in whole or in part bears the burden of establishing that such sealing is necessitated by a compelling interest and is no broader than necessary to serve that interest. *Press-Enterprise I*, 464 U.S. at 510; *In re Hearst Newspapers*, 641 F.3d at 181. As noted above, this Court reviews a district court's analysis of the case-specific interests in sealing for abuse of discretion but reviews *de novo* whether the district court applied the correct legal standard. *Ford*, 242 F.3d at 241; *Steering Comm.*, 461 F.3d at 601; *see also June Med. Servs.*, 22 F.4th at 519 ("[A] district court abuses its discretion in sealing or unsealing documents when it fails to identify and apply the proper legal standard and when it fails to provide sufficient reasons for its decision to enable appellate review.").

The district court's denial of Intervenors-Appellants' unsealing motion was premised on incorrect legal standards. While the Order briefly nods to "the First Amendment rights of the press," it cannot be read as an application of the

constitutional requirement that judicial records are presumptively public and may be sealed only after a court makes specific factual findings that sealing is necessary—and narrowly tailored—to serve a compelling government interest. ROA.691. On the contrary, the Order relies entirely on a portion of a prior unsealing order entered in 2020 that permitted the redaction—in different judicial records—of references to Ahsani's cooperation with authorities, ROA.2794, and effectively treats Intervenors-Appellants' motion to unseal as a motion for reconsideration of that three-year-old order. ROA.690 (finding "no good reason to set aside Judge Gilmore's order"). In doing so, the district court made three, related legal errors, each of which is an independent ground for reversal.

*First*, the district court improperly applied a presumption *of secrecy* to Ahsani's sentencing and the judicial records filed in connection with that proceeding—an approach directly contrary to this Court's clear precedent establishing a constitutional presumption *in favor of public access*. *See In re Hearst Newspapers*, 641 F.3d at 181 (citing *Press-Enterprise II*, 478 U.S. at 9–10). The district court determined that any records referencing Ahsani's cooperation—a central factor in the sentence he received, *see, e.g.*, ROA.714–15, ROA.720–22— would be sealed, by default, unless and until the district court found reason to unseal them. *Id.* As its sole justification for reversing the presumption of access, the Order looked to what it called the "pertinent part" of Judge Gilmore's 2020

ruling—the portion allowing "limited redactions" to mentions of defendants'
cooperation in records that Judge Gilmore ordered unsealed.  ROA.690.  Finding
"that each document" subsequently filed in connection with Ahsani's sentencing
"falls squarely within" Judge Gilmore's 2020 ruling, the district court denied
Intervenors-Appellants' motion to unseal any portion of them.  ROA.690–91.

But Intervenors-Appellants never asked the district court to revisit the 2020
order; rather, they invoked their presumptive, constitutional right to inspect
different judicial records newly filed in the Ahsani Prosecution in connection with
Ahsani's then-upcoming sentencing.  ROA.461–75.  In ruling on Intervenors-
Appellants' motion to unseal, the district court was required to begin with "the
presumption [of openness]," and maintain the sentencing memoranda and other
records at issue under seal only if it found, on the record presently before it, "an
overriding interest based on findings that closure is essential to preserve higher
values and is narrowly tailored to serve that interest."  *In re Hearst Newspapers*,
641 F.3d at 181 (quoting *Press-Enterprise II*, 478 U.S. at 9–10) (alteration in
original); *see also Oregonian Publ'g Co. v. U.S. District Court*, 920 F.2d 1462,
1467 (9th Cir. 1990).  Its failure to do so is reversible error.

*Second*, in denying Intervenors-Appellants' motion to unseal, the district
court failed to consider—and to make any on-the-record findings based on—the
*current* status of the Ahsani Prosecution, including the fact that Ahsani has been

sentenced, and the present state of public knowledge about Ahsani's "spectacular" level of cooperation with the Government. ROA.668. The First Amendment requires district courts to make specific factual findings regarding the existence, at present, of any compelling interests in sealing because the interests supporting closure may—and often do—fade over time. *See, e.g.*, *June Med. Servs.*, 22 F.4th at 518 n.3 (noting that sealing cannot be justified "by simply stating that the originating court sealed the matter, as the circumstances that justified sealing in the originating court may have changed" (citation and internal quotation marks omitted)); *In re Cendant Corp.*, 260 F.3d 183, 196 (3d Cir. 2001) (noting that a "sealing order must be lifted at the earliest possible moment when the reasons for sealing no longer obtain"); *Wash. Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (holding sealing was improper when sealed information regarding defendant's cooperation had become public). But the Order rests entirely on the district court's conclusion that Judge Gilmore had already "addressed the issues regarding the release of information in this case years ago." ROA.690. The Order makes no findings as to the existence of any compelling interest that necessitates sealing of specific information in the Ahsani Prosecution *now*. Simply put, relying solely on what a judge decided may have been warranted "years ago" to justify sealing portions of different judicial records now was legal error.

Had the district court applied the correct legal standard under the First Amendment, it would have found that no compelling interest justifies the continued wholesale sealing of the sentencing memoranda and other records filed in connection with Ahsani's sentencing. Preventing disclosure of Saman and Cyrus Allen Ahsani's cooperation with law enforcement—the sole basis for the redactions previously permitted by the district court in 2020—is no longer a viable interest. Public court filings, government documents, statements by government officials and others, as well as media coverage in the United States and United Kingdom have revealed numerous details about the Ahsani Prosecution, including Ahsani's cooperation with both governments.[10] And both Ahsani and the

---

[10]   *See, e.g.*, ROA.480–505 (R. v. Akle [2021] EWCA (Crim) 1879 [20], [73], [76], [87], https://perma.cc/5NV4-RVDF (court opinion describing how the U.K. Serious Fraud Office dropped its prosecution against Saman and Cyrus Ahsani in exchange for their cooperation, which became part of U.S. plea agreement)); ROA.507–34 (Applicant's Skeleton Argument, *Akle v. R.*, ¶ 59 (Sept. 30, 2021) ("The [Ahsani] sons were co-operating in the US, but had not then (and have not now) faced any punishment.")); ROA.536–50 (Prosecution Response to Defence Application to Stay for an Abuse of Process, *R. v. Akle*, ¶ 29 (Jan. 19, 2020) (U.K. prosecution noting that Saman Ahsani had decided to "plead guilty and to co-operate with the authorities . . . in the US")); ROA.552–56 (*The Unaoil Bribery Scandal*, Spotlight on Corruption (Mar. 30, 2022), https://perma.cc/KBY3-N4XK); ROA.558–663 (Sir David Calvert-Smith, *Independent Review into the Serious Fraud Office's handling of the Unaoil Case – R v Akle & Anor*, Att'y Gen.'s Off. (July 21, 2022), https://perma.cc/YF5U-EDLN (describing how Saman Ahsani's "formal cooperation only commenced once he arrived in the US," that "cooperating with US and foreign law enforcement" was a condition of his plea agreement, and that "[p]ermission was granted by the US courts to reveal the fact of the Ahsanis' . . . cooperation status [] on 13th September 2019")); ROA.665–71 (Dobrik, *Divisive, Zealous and Connected*, *supra* (quoting former Drug

Government discussed his cooperation in open court during the public portion of his sentencing hearing. *See, e.g.*, ROA.714 (Government prosecutor stating that Ahsani had decided to "do[] the right thing in an extraordinary and exemplary way"); ROA.715 (Ahsani's counsel noting the "five-plus years that he's been working with United States authorities" and saying he "went to great[] lengths to atone for his crimes"); ROA.721–22 (Ahsani referring to himself as "Exhibit A for the benefits of true cooperation," saying he was "grateful" for "that opportunity" to "assist the U.S.," and that he plans on "continuing to help others see the benefits of cooperation"). Indeed, the district court's Order itself discusses Ahsani's "ongoing cooperation," undercutting its conclusion that overriding interests compel sealing any mention of it. ROA.690–91.

As this Court has held, "[p]ublicly available information cannot be sealed" because it "*already* belong[s] to the people." *June Med. Servs.*, 22 F.4th at 520–21

---

Enforcement Agency agent as saying Saman Ahsani may avoid prison time in the United States due to his "spectacular" level of cooperation, and Justice Department lawyers saying that U.K. prosecutors had made "the fact of Mr Ahsani's co-operation with the US authorities public")).

    The Court may take judicial notice of the fact that these U.K. court filings and other documents have discussed, among other things, Saman Ahsani's cooperation, as a matter that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411 (6th Cir. 2006) (holding court may take judicial notice of foreign criminal court documents); *Lee v. Lee*, No. 19-CV-8814, 2022 WL 18278434, at *3 (C.D. Cal. Dec. 1, 2022) (taking judicial notice of foreign court documents and citing cases doing same).

(emphasis in original); *see also Bradley*, 954 F.3d at 229 (finding public knowledge that parties reached a settlement diminished privacy interest in its amount). And, plainly, the unsealing of judicial documents in a criminal case can pose no threat to the safety of defendants and their families, the integrity of ongoing law enforcement efforts, or the secrecy of sensitive matters when the information contained in those documents, including the fact of a defendant's cooperation, is already known or can easily be surmised from the public record.

Federal courts of appeals across the country have repeatedly so held. In *Washington Post v. Robinson*, the D.C. Circuit held that the plea agreement of a cooperating witness must be unsealed when the fact of the witness's cooperation "was already within the public knowledge," as "it could hardly have posed any additional threat to the ongoing criminal investigation" nor "any extra threat to the safety of [the cooperating witness] and his family." 935 F.2d at 291–92. And, in *CBS, Inc. v. United States District Court*, the Ninth Circuit held that a cooperating witness's motion to reduce his sentence and the government's response could not be filed under seal in part because "most of the information the government seeks to keep confidential concerns matters that might easily be surmised from what is already in the public record." 765 F.2d 823, 825 (9th Cir. 1985); *see also, e.g.*, *June Med. Servs.*, 22 F.4th at 521 ("[O]nce the identity of the unindicted coconspirator became [publicly] known, the indictment should have been

unsealed[.]" (quoting *United States v. Pearson*, 340 F.3d 459, 465 (7th Cir. 2003),

*vacated on other grounds sub nom.*, *Hawkins v. United States*, 543 U.S. 1097

(2005))); *Oregonian Publ'g Co.*, 920 F.2d at 1467 (reversing trial court's decision

to seal plea agreement and related documents because "[t]here was no evidentiary

support for" its theory that "because the agreement contemplated [defendant's]

cooperation with the government, [he] would be in danger if the court disclosed the

terms of the plea agreement"); *In re The Herald Co.*, 734 F.2d 93, 101 (2d Cir.

1984) (questioning "whether the information sought to be kept confidential has

already been given sufficient public exposure to preclude a closure order on this

account" due to having been published in newspaper).

Federal district courts have reached the same conclusion in similar

circumstances. *See, e.g.*, *United States v. Cannon*, No. 14-CR-87, 2015 WL

3751781, at *3–4 (W.D.N.C. June 16, 2015) (finding there was "no compelling

government interest" in redacting sections of sentencing memorandum that were

discussed "in open court during the sentencing hearing"); *United States v. Huntley*,

943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) (holding sentencing memorandum must

be unsealed where government's investigation and defendant's cooperation were

"well known" and had been reported in the press); *Vance v. Wilson*, No. 10-CV-

300, 2011 WL 3794380, at *1 (E.D. Ky. Aug. 25, 2011) (holding that sealing

motion for downward departure for substantial assistance was improper in part

because public court filings referenced cooperation); *Strevell*, 2009 WL 577910, at *6 (refusing to maintain under seal documents referring to defendant's cooperation where fact of cooperation was public knowledge); *United States v. James*, 663 F. Supp. 2d 1018, 1021 (W.D. Wash. 2009) (holding that where fact of defendant's cooperation was "publicly available, no purpose would be served by sealing those portions of the documents"); *United States v. Hirsh*, No. 03-CR-58, 2007 WL 1810703, at *3 (E.D. Pa. June 22, 2007) (unsealing sentencing memorandum where fact of cooperation was known and there was no evidence of safety risks from disclosure).

Simply put, Saman and Cyrus Allen Ahsani's extensive cooperation with law enforcement authorities is widely known. Any individuals or entities involved in the Unaoil corruption scheme who have not yet settled or been charged (as many have) are already well aware of that cooperation. Thus, neither Ahsani, nor the Government could have met their burden to demonstrate—and the district court could not have found—that concealing that cooperation is a compelling interest that necessitates sealing any portion of any judicial record filed in connection with Ahsani's sentencing.

*Third*, and finally, the district court also erred in failing to properly consider less-restrictive alternatives to sealing the judicial records at issue in their entirety. When, as here, the constitutional right of access applies, any closure or sealing

must be no greater than necessary to serve the identified compelling interest. *See Press-Enterprise I*, 464 U.S. at 510. Less restrictive alternatives *must* be used when possible, including targeted redaction in lieu of wholesale sealing. *See id.*; *Binh Hoa Le*, 990 F.3d at 419 n.38; *In re Hearst Newspapers*, 641 F.3d at 181; *Hitt*, 473 F.3d at 154. Indeed, "[r]edaction constitutes a time-tested means of minimizing any intrusion on th[e] right" of access. *In re Providence J. Co.*, 293 F.3d at 15.

Here, the Order states only that "appropriate redactions in this instance would essentially destroy any value the documents have," with no further explanation. ROA.691. This conclusory assertion does not approach satisfying the district court's obligation to consider the necessity of sealing on a document-by-document, line-by-line basis. *See, e.g.*, *Binh Hoa Le*, 990 F.3d at 419; *In re Providence J. Co.*, 293 F.3d at 15 (holding district court's "blanket characterization" that public and non-public information was "inextricably intertwined" "falls well short of" constitutional requirements). Indeed, even assuming, *arguendo*, that the Government or Ahsani had met their burden to demonstrate a compelling interest warranting the sealing of some information in the judicial records at issue, every interest the Order identifies could be accommodated by the less-restrictive alternative of applying targeted redactions and disclosing the remainder of the records. *Cf., e.g.*, *June Med. Servs.*, 22 F.4th at

518, 521 (holding that, in redacting "sensitive information that could jeopardize the privacy" of individuals, "the district court shall not seal or order redaction of any publicly available documents or information"); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011) (collecting cases in which redaction, "rather than refusing to unseal the materials entirely," was adequate to protect a range of interests implicated in criminal case records, including "the privacy interests of innocent third parties," "confidential informants," and an "ongoing investigation").

In sum, in denying Intervenors-Appellants' motion to unseal, the district court failed to apply the correct legal standards under the First Amendment. It improperly presumed the records at issue should be sealed from public view, it did not make—and could not have made—specific findings of a compelling interest necessitating the ongoing sealing of the sentencing memoranda and other judicial records filed in connection with Ahsani's sentencing on the factual record currently before it, and it did not properly consider the less-restrictive alternative of redaction. Each of these errors, alone, requires reversal.

**B.      The district court failed to apply the correct legal standard under the common law.**

The district court erred, too, in failing to apply the proper legal standard under the common law. This failure provides a separate, independent basis for reversal. *See Binh Hoa Le*, 990 F.3d at 418–19; *Van Waeyenberghe*, 990 F.2d at

848.  When, as here, the common law presumption of public access applies, this Court has instructed district courts to "be ungenerous with their discretion to seal judicial records" and required them to consider the public's interest in access. *Binh Hoa Le*, 990 F.3d at 418.  As in the First Amendment context, though this Court generally reviews a district court's balancing of the case-specific interests implicated by a motion to seal or unseal judicial records for abuse of discretion, it reviews *de novo* whether the district court applied the correct legal standard.  *See Sealed Search Warrants*, 868 F.3d at 391 (reviewing scope of common law right *de novo*); *In re Hearst Newspapers*, 641 F.3d at 174; *Ford*, 242 F.3d at 241.

Each of the reversible errors committed by the district court when it denied Intervenors-Appellants' motion to unseal under the First Amendment—applying a presumption in favor of sealing, failing to determine what, if any, interests in sealing judicial records related to Ahsani's sentencing currently exist, and failing to consider less-restrictive alternatives to wholesale sealing of those records—is also an error under the common law.

*First*, under the common law, "the working presumption is that judicial records should not be sealed." *Binh Hoa Le*, 990 F.3d at 419.  As discussed *supra*, the district court failed to apply a presumption in favor of public access when it asked whether there was reason for it to "set aside" Judge Gilmore's 2020 order requiring different records to be unsealed with redactions.  ROA.690.

*Second*, under this Court's precedent, district courts must weigh the *current* interests for and against sealing in the common-law context; the district court below looked instead to interests implicated "years ago." *Id.*; *see, e.g.*, *June Med. Servs.*, 22 F.4th at 518 n.3; *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 71 (11th Cir. 2013) (holding unsealing was proper under common law when district court "found that the passage of time had altered the balance enough so that the value of public access to [the sought records] exceeded the value of confidentiality").

*Third*, under the common law, as under the First Amendment, sealing orders must be no broader than necessary; here, the district court ordered all the judicial records at issue in this appeal to be kept under seal in their entirety, without properly considering the alternative of redaction. *See Binh Hoa Le*, 990 F.3d at 420 (calling for "consideration of less drastic alternatives").

In addition, the public's interest in access to judicial records to which the common law right applies "is even greater where, as here, the case involve[s] matters of particularly public interest." *June Med. Servs.*, 22 F.4th at 520 (citation and internal quotation marks omitted). Yet the district court failed entirely to consider the public's powerful interest in understanding the basis for the sentence Ahsani received, including the arguments Ahsani and the Government made to the district court concerning his sentence. ROA.690–91. From the face of the Order, "it does not appear that the district court weighed as a factor in favor of disclosure

the presumption of the public's right of access," and, here, "this factor alone outweighs any interest favoring nondisclosure." *Bradley*, 954 F.3d at 233; *see also Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A 1981) (requiring courts to consider the presumption of public access as "one of the interests to be weighed on the [public's] 'side of the scales'" (quoting *Warner Commc'ns*, 435 U.S. at 602)).

As detailed above, the Ahsani Prosecution arose out of a sprawling international corruption scheme involving one of the world's most profitable industries and implicating several foreign governments and numerous major U.S. and international corporations. As the Government stated during the public portion of Ahsani's sentencing, for more than a decade, Unaoil's bribes "undercut fair business practice, undermined the rule of law and lined the pockets of corrupt government officials as well as [defendants'] own, all at the expense of the citizens whose countries were destabilized by this corruption[.]" ROA.713.

Given Ahsani's central role in the Unaoil corruption scheme, there is unquestionably substantial, legitimate public interest in understanding the basis for the sentence imposed by the district court and, thus, in public access to the judicial records filed by the Government and Ahsani in connection with his sentencing. The sealed sentencing memoranda, for example, were filed for the very purpose of influencing the district court's decision to sentence Ahsani to less than the five-

year maximum.  And "[t]he public has a vital interest in knowing the details of deals made between the government and criminal defendants that accomplish, or have the potential to bring about, lower punishment than otherwise contemplated by law." *Raybould*, 130 F. Supp. 2d at 833.

"Few things would cause the public to be more suspicious of our system of criminal justice than to have secret proceedings that lead to special sentencing treatment for select criminal defendants." *Id.*  Indeed, such suspicions already hang over this case, with one legal observer remarking that Ahsani "'got the deal of the century.'"  ROA.671.  The district court's failure to even consider the weight of the public interest in access in this case under the common law was legal error.

*    *    *

The district court failed to apply the correct legal standard under the First Amendment and the common law when it denied Intervenors-Appellants' motion to unseal the parties' sentencing memoranda and other sealed judicial records filed in connection with Ahsani's sentencing, including the transcript of the non-public portion of Ahsani's sentencing hearing.  Had it done so, it would have found no countervailing—let alone compelling—interest to support the continued, wholesale sealing of those records, particularly given the extensive information about Ahsani's cooperation with law enforcement that is in the public record (and in the record before this Court), and the especially powerful public interest in access in

this case.  This Court should reverse the decision below with instructions to immediately unseal the sentencing memoranda and other sealed judicial records at issue with, at most, narrowly tailored redactions shown to be necessitated by a compelling, countervailing interest, and supported by specific factual findings.[11]

## IV. The district court's reliance on wholly sealed arguments denied Intervenors-Appellants a meaningful opportunity to be heard.

Where public access to judicial records or proceedings is at stake, the First Amendment and Due Process Clause guarantee the press and public "a meaningful opportunity to be heard before any contrary decision is made." *United States v. Edwards*, 823 F.2d 111, 119 (5th Cir. 1987); *see also In re Hearst Newspapers*, 641 F.3d at 182 (sentencing proceedings in particular).  In all but the most exceptional cases, that meaningful opportunity entails a chance to "directly rebut the reasons" parties have advanced in support of closure or sealing, *In re Cap. Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 95

---

[11]    Reversal is warranted here because of the paucity of the Order's stated reasoning for continued sealing and the importance of timely public access.  *See, e.g.*, *Bradley*, 954 F.3d at 225 (reversing and vacating sealing orders entirely); *Holy Land Found. for Relief & Dev.*, 624 F.3d at 694 (directing "the district court to unseal its order in accordance with this opinion"); *see also Doe v. Shibinette*, 16 F.4th 894, 901 (1st Cir. 2021) (reversing, and rejecting remand request, where "[t]he record . . . is sufficiently developed for us to resolve those issues now, thereby obviating the possible need for wasteful future appeals"); *Pub. Citizen*, 749 F.3d at 272 (finding that "the public and press generally have a contemporaneous right of access to court documents and proceedings when the right applies" and "instruct[ing] the district court to unseal the case in its entirety").

(3d Cir. 1990), because "[o]ur adversarial legal system generally does not tolerate ex parte determinations on the merits of a [party's claims]," *In re Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. Unit B 1981).

The district court here violated that basic procedural requirement by denying Intervenors-Appellants any degree of access to the parties' joint brief in opposition to their unsealing motion—and, for that matter, notice that the brief even existed. *Compare* ROA.2797 (docketing brief at ECF No. 130 as "Sealed Event"), *with* ROA.690 (noting, for first time on public record, that the parties "have filed a joint response in opposition. (Doc. No. 130)"). To start, as noted above, the parties' brief is a judicial record to which the public has a presumptive right of access. *See In re L.A. Times Commc'ns LLC*, 28 F.4th at 296 (common law presumption attaches to opposition to motion to unseal); *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1096 (9th Cir. 2014) (First Amendment presumption of access attaches to records filed in connection with motion to unseal). But there is no indication in the record that the district court undertook the required "line-by-line" review of that brief before sealing it as a blanket matter, *Binh Hoa Le*, 990 F.3d at 419 (citation omitted), or even that the district court made findings—at any level of generality—to justify concealing both its contents and existence.

Basic principles of due process underline the error. The process due in connection with an application to unseal judicial records or to access proceedings

turns on the familiar test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), weighing "the private interest" at stake, the "risk of an erroneous deprivation of such interest through the procedures used," and "the Government's interest" in resisting a more fulsome opportunity to be heard. *In re Hearst Newspapers*, 641 F.3d at 184 (quoting *Mathews*, 424 U.S. at 335). As to the "private" interest at stake, "[t]he public's right of access to judicial records is a fundamental element of the rule of law" and a keystone of judicial legitimacy. *Binh Hoa Le*, 990 F.3d at 417 (citation and internal quotation marks omitted). Further, wholesale sealing of the parties' opposition posed an obvious risk that unjustified secrecy would result. With "no information concerning the government interests that would enter into" the right-of-access inquiry, and no chance "[to] directly rebut the reasons that led the district court to seal" records, Intervenors-Appellants were placed "at a severe disadvantage" in vindicating the public's right to transparency. *In re Cap. Cities*, 913 F.2d at 95. Intervenors-Appellants had no opportunity, for instance, to measure the parties' claimed secrecy interests against "press reports" and other information already in the public domain that might undercut those interests—a question "essential to the resolution of the issue before the district court." *Id.*

In the face of those harms, no interests could have justified sealing every word of the parties' joint opposition brief and denying Intervenors-Appellants notice that it existed. As to the failure to note the filing on the docket, notice of the

bare fact that the parties *had* filed a sealed opposition could not have compromised any claimed secrecy interests, but would at least have given Intervenors-Appellants an opportunity to "file[] a motion" to unseal it for purposes of filing a reply. *In re Hearst Newspapers*, 641 F.3d at 185. And as to the brief's contents, it is not plausible that a "line-by-line" review would lead to the conclusion that not a word could be made public. *Binh Hoa Le*, 990 F.3d at 419 (citation omitted). As any number of courts have observed, "[a] motion to seal itself should not generally require sealing or redaction because litigants should be able to address the applicable standard without specific reference to confidential information." *Doe v. City of New York*, No. 22-CV-7910, 2022 WL 15153410, at *4 (S.D.N.Y. Oct. 26, 2022) (internal quotation marks and citation omitted) (collecting cases). The point is all the clearer on the facts of this particular case, where the key consideration on which the district court relied—Ahsani's cooperation—is public. If that interest can be discussed in the district court's public Order, the parties could have argued its significance in a public opposition brief, subject—if necessary—to any tailored redactions narrowly tailored to a compelling interest.

For these reasons, courts in and out of this Circuit have concluded that the First Amendment and due process generally do not tolerate the wholesale sealing of an opposition to a motion to unseal judicial records, even where the integrity of

an ongoing investigation is allegedly at stake.[12]  Here, as far as the record shows, the district court never considered the due process concerns raised by the wholesale sealing of the parties' joint opposition brief, and never weighed the *Mathews* factors "in relation to the unique facts of the case." *In re Hearst Newspapers*, 641 F.3d at 184.  That oversight placed before the district court arguments that never confronted—and could not have survived, for all of the reasons given above—"the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656 (1984).  The denial of a meaningful opportunity for Intervenors-Appellants to be heard was reversible error.[13]

---

[12]    *See, e.g.*, *In re L.A. Times Commc'ns LLC*, 28 F.4th at 298–99 (ordering district court to reconsider on remand news organization's contention "that it was fundamentally disadvantaged by the court's decision to seal the government's opposition memorandum" to the news organization's application to unseal records related to an investigation of a U.S. senator (internal quotation marks and alterations omitted)); Order & Opinion, *In re Associated Press*, No. 5:22-mc-0011 (S.D. Tex. Nov. 28, 2022), slip op. at 4 (rejecting "the Government's efforts to file all of its briefing in this case under seal" as "concerning" and "unserious" in connection with application to unseal records related to investigation of U.S. representative), https://perma.cc/VR4V-F2L5; Order, *In re Application of PennLive*, 1:22-mc-00756 (M.D. Pa. Feb. 7, 2023), slip op. at 13 (same as to application to unseal records related to investigation of a different U.S. representative), https://perma.cc/ML4B-4V9Z.

[13]    The point is not moot because the problem is "'capable of repetition, yet evading review.'"  *In re Hearst Newspapers*, 641 F.3d at 175 (quoting *Press-Enterprise II*, 478 U.S. at 6).  Intervenors-Appellants are "prominent newspaper[s] that seek[] to cover major cases, and it is reasonable to expect" that Intervenors-Appellants will again be denied access to records and proceedings without a meaningful opportunity to be heard.  *Id.*  And it is, by definition, impossible to fully litigate an objection to the denial of such an opportunity before a district court

## CONCLUSION

For the foregoing reasons, Intervenors-Appellants respectfully request that this Court reverse the decision below and instruct the district court to unseal the sentencing memoranda, transcript of the closed portion of the sentencing proceeding, and related judicial records at issue—docketed in the district court at ECF Nos. 113, 115, 116, 118, 122, 129, 130, and 142, *see* ROA.2796–99—subject only, if necessary, to narrowly tailored redactions shown to be necessitated by compelling, countervailing interests, and supported by specific factual findings.

Dated: April 7, 2023                    Respectfully submitted,

                                        */s/ Katie Townsend*
                                        _____
                                        Katie Townsend
                                        REPORTERS COMMITTEE FOR
                                        FREEDOM OF THE PRESS
                                        1156 15th St. NW, Suite 1020
                                        Washington, D.C. 20005
                                        Telephone: (202) 795-9300
                                        Facsimile: (202) 795-9310
                                        ktownsend@rcfp.org

                                        *Counsel for Intervenors-Appellants*

---

issues the relevant ruling. Further, these issues are capable of repetition in the upcoming sentencing of Cyrus Allen Ahsani before the same district court.

**CERTIFICATE OF SERVICE**

I, Katie Townsend, hereby certify that I have filed the foregoing Intervenors-Appellants' Opening Brief electronically with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. I certify that all participants in this case are registered as CM/ECF Filers and that they will be served by the CM/ECF system.


Dated: April 7, 2023

*/s/ Katie Townsend*
Katie Townsend
*Counsel for Intervenors-Appellants*

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and
Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P.

32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f), this document contains 11,951 words.

2. This document complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

document has been prepared in a proportionally spaced typeface using Microsoft

Word Version 16.70, part of Microsoft Word for Office 365, in 14-point Times

New Roman font.


Dated:  April 7, 2023

*/s/ Katie Townsend*
Katie Townsend
*Counsel for Intervenors-Appellants*